PROYOSTY, J.
This is a suit in damages against the sheriff of the parish of Iberia and James L. Schexnayder and others for the alleged illegal arrest of plaintiff.
At an election for mayor and councilmen of the town of Jeanerette there were two tickets in the field. Plaintiff was candidate for councilman on one of the tickets, and defendant for mayor on the other. Factional feeling was strong. It being known that the vote would be close, both parties sought to make an accurate canvass, and for that purpose obtained a list of the qualified voters from the registrar. The lists thus furnished did not contain the name of plaintiff. The reason was that at that part of the registration book containing the names of the qualified voters of the town of Jeanerette the blanks opposite the name of the plaintiff had not been filled and the name itself had been canceled by a line run through it, and that the registrar, and, for the matter of that, all others who examined the roll previous to the election, did not look any further on the roll to see whether plaintiff was or not registered, hut concluded that he was not. As a matter of fact, plaintiff was duly registered as a voter of the ward within which Jeanerette is situated and was a duly qualified voter. The erasure of plaintiff’s name had been done previous to the incumbency of the present registrar. On election day, when plaintiff came to vote, the defendant Schexnayder challenged his vote. The name of the plaintiff appeared on the poll tax list at the poll. Whether it appeared on the registration list is a contested point; the preponderance of the evidence being that it did. Plaintiff made affidavit to his being a qualified voter and was allowed to vote. As plaintiff was leaving the polling booth, defendant Schexnayder called upon a deputy sheriff, who happened to be present, to arrest him for illegal voting. The deputy told plaintiff to consider himself under arrest, and to report at the justice of the peace court the next morning at 9:30. Plaintiff was not the only person who was arrested on that day for illegal voting, but four others were; one at the instance of the candidate for mayor on the other ticket. Affidavits were regularly made against these persons on the next morning and warrants issued against them, and they were, after a fashion, arrested; that is to say, they were told that they were under arrest and to go and get ready to go with the deputy sheriff to New Iberia, the county seat. They did go on that day, and under arrest, after a fashion; and, about an hour and a half after reaching there, and without their even going to the courthouse, were bonded to appear at the next session of the district court. The election had been hotly contested and great excitement had prevailed, and even the proceedings of the following morning were attended with more or less excitement and heat. Some months later indictments were found against all of them except plaintiff. This suit was then brought.
For the arrest on the day after the election, on regular affidavit and warrant, defendants are not liable. No one is a qualified voter whose name is not on the regis *295 tration book, and, for all that was known, after an examination of the registration roll made in good faith both by the registrar and by others, plaintiff’s name was not on the registration book, and, for all that was known, plaintiff was not a qualified voter. For all that was known, therefore, there was probable cause for accusing him- of illegal voting.
The arrest at the poll was made, however, without affidavit and without a warrant, and it was so made under circumstances which did not call for immediate action. Plaintiff was and had long been a resident of the town, and the head of a family and a property owner in the town, and in fact was an alderman of the town, seeking re-election. There was absolutely no reason for believing that he would flee from justice before an affidavit could be made against him and a warrant issued in due course. Moreover, by article 201 of the Constitution:
“Electors shall, in all cases except treason, felony or breach of the peace, be privileged from arrest during their attendance on elections, and in going 'to and returning from the same.”
The arrest was therefore doubly illegal. It was a palpable invasion of plaintiff’s liberty ; and, as a consequence, damages in some amount must be allowed.
We are not disposed, however, to attach to the proceedings a gravity which they do not possess. The learned trial judge thought so light of them that he was of opinion they did not show a cause of action. Everybody understood that these arrests were nothing more than moves in the political game in progress. The election was so close that one vote might change the result, and it was prognosticated that the result would be contested, whatever it might be; and these accusations of illegal voting, and the prompt action upon them, were, as it were, preliminary steps in the contest — getting the evidence in good shape for the contests. The contestants were political opponents, not personal enemies. Schexnayder bore no malice to plaintiff; and, of course, the deputy sheriff bore none, and still less, if anything, did the sheriff. The case is not one for any heavy damages.
We take with a large grain of salt the testimony of the plaintiff that he and his family were made nervous and sick by this criminal prosecution. The discovery that plaintiff had been registered, though his name appeared in the wrong place, removed all seriousness from the accusation.
We think that a judgment for $250 will entirely satisfy the ends of justice.
A number of defendants are included in the suit on an allegation of conspiracy. We find no proof of such conspiracy.
It is therefore ordered, adjudged, and decreed that the judgment appealed from le affirmed as to all the defendants except Schexnayder and the sheriff, and that as to the sheriff and Schexnayder it be set aside; and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiff, John O. Thomas, and against the defendants, George Henderson, sheriff of the parish of Iberia, and James L. Schexnayder, in solido, in the sum of $250, with legal interest from this date, and for the costs of this suit.